IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| DONALD RAY SIMPSON, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| VS. | ) | No. 13-1072-JDT-egb |
| MELVIN BOND, ET AL., | ) | |
| Defendants. | ) | |

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT,
CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH,
AND NOTIFYING PLAINTIFF OF APPELLATE FILING FEE

The *pro se* Plaintiff, Donald Ray Simpson, who is currently an inmate at the South Central Correctional Facility in Clifton, Tennessee, filed a complaint pursuant to 42 U.S.C. § 1983 concerning his previous confinement at the Haywood County Jail ("Jail") in Brownsville, Tennessee. (ECF No. 1.) The Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to 28 U.S.C. §§ 1915(a)-(b). (ECF No. 3.) On June 17, 2013, the Court dismissed portions of the complaint and directed that process be issued for the Defendants, Elma Walker, Tonya Fisher, Jerry Fleming, and Cedric Tyus. (ECF No. 9.)[1] Presently before the Court is the Defendants' motion for summary judgment, filed July 18, 2014. (ECF No. 47 & 48.)

---

[1] The Clerk is directed to MODIFY the docket to record the first names of Defendants Fleming and Tyus, which are found in later documents. (*E.g.*, ECF Nos. 21 & 36.)

Pursuant to Local Rule 56.1(b) and Federal Rule of Civil Procedure 6(d), Plaintiff's response to the motion for summary judgment was due on or before August 18, 2014. However, he has not filed a response or sought an extension of time in which to do so.

Pursuant to Fed. R. Civ. P. 56, summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Rule 56(c)(1) provides that "[a] party asserting that a fact cannot be or is genuinely disputed" is required to support that assertion by:

    (A)    citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers or other materials;[2] or

    (B)    showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)" the district court may:

    (1)    give an opportunity to properly support or address the fact;

---

[2] "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Additionally, Rule 56(c)(4) specifically provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it; or

(4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

In *Celotex Corp.*, the Supreme Court explained that Rule 56:

mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

477 U.S. at 322-23. In considering whether to grant summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (same).

A genuine issue of material fact exists "if the evidence [presented by the non-moving party] is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could

reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict[.]"

*Id.* at 252; *see also Matsushita*, 475 U.S. at 586 ("When the moving party has carried its burden under Rule 56[(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." (footnote omitted)). However, the Court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter. *Liberty Lobby*, 477 U.S. at 249. Rather, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

The fact that Plaintiff did not respond does not require granting Defendants' motion. Nevertheless, if the allegations of the complaint are contravened by Defendants' evidence and Defendants are entitled to judgment as a matter of law on those facts, then summary judgment is appropriate. *Smith v. Hudson*, 600 F.2d 60, 65 (6th Cir. 1979).

In the order of partial dismissal, the Court set forth the relevant allegations:

> On December 9, 2012, Defendant Fleming ordered the maximum-security inmates to lock down so Plaintiff could have his recreation hour. Plaintiff came out of his cell, and inmates Shaun Tafiafero, Kenneth Deberry, and Christian Delk motioned for Plaintiff to come over to them. Plaintiff opened their cell door and went in. Once he was inside, Delk swung at Plaintiff and broke his nose. Plaintiff fought his way out of the cell and shut the door. X-rays were taken on December 9, 2012, and, on December 12, 2012, Plaintiff was taken to the emergency room for a CT scan. ([ECF No.] 1 at 2.) Plaintiff avers that Officer Fleming was supposed to make sure that the doors to the other inmates' cells were locked before releasing him. (*Id.*)
> Plaintiff also contends that he has been discriminated against on the basis of his race . . . . In approximately June 2012, Lamount Shaw, an African American inmate, jumped Plaintiff over a job. Plaintiff pressed the panic

4

button, and Defendants Walker and Tyus and two other Jail employees responded. Walker, who is African American, put Plaintiff on 23-1 lockdown for 30 days, whereas Shaw, the aggressor, got out of confinement the very next day. Walker also let Shaw have the job. . . . (*Id.* at 3.)

. . . .

On December 9, 2012, Plaintiff was jumped by Christian Delk, an African American inmate, who broke his nose. (*Id.* at 4.)[1] Defendant Fisher, who is white, and Defendant Tyus, who is African American, told a nurse practitioner that Plaintiff injured himself. Don Willie, who is not a party to this suit, sent Plaintiff to a suicide cell and, later, to the Western State Mental Institution in Bolivar, Tennessee. Plaintiff was later returned to the Jail. . . . (*Id.* at 4.)

(ECF No. 9 at 2-3.) In support of the motion for summary judgment, Defendants have submitted their Declarations. (Walker Decl., ECF No. 47-3; Fleming Decl., ECF No. 47-4; Fisher Decl., ECF No. 47-5; Tyus Decl., ECF No. 47-6.) As Exhibit A to Fisher's Declaration, Defendants have submitted a DVD recording containing video footage from the Jail's camera system showing the area and time period in which the incident on December 9, 2012, allegedly occurred. The Court has viewed that recording. Defendants have also submitted the Declaration of registered nurse Janice Webb (Webb Decl., ECF No. 47-7), to which Plaintiff's medical records from the Jail are attached as exhibits (ECF Nos. 47-8, 47-9, 47-10, & 47-11).

Plaintiff's claims that the Defendants failed to protect him from assault by other inmates and that Defendants' actions led to a denial or delay of medical care for his injuries

arise under the Eighth Amendment.³ An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). The objective component requires that the deprivation be "sufficiently serious." *Farmer*, 511 U.S. at 834; *Hudson*, 503 U.S. at 8; *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). To establish the subjective component of an Eighth Amendment violation, a prisoner must demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." *Farmer*, 511 at 834; *see also Wilson*, 501 U.S. at 302-03. The plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Woods v. Lecureux*, 110 F.3d 1215,1222 (6th Cir. 1997). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. A prison official cannot be found liable under the Eighth Amendment unless he subjectively knows of an excessive risk of harm to an inmate's health or safety and also disregards that risk. *Id.* at 837. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not" does not amount to cruel and unusual punishment. *Id.* at 838.

Defendant Fleming contends that summary judgment is appropriate on Plaintiff's claim for failure to protect because he cannot establish either the objective component or the

---

³ Convicted inmates' rights stem from the Eighth Amendment, while pre-trial detainees' rights stem from the Fourteenth Amendment. *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242 (6th Cir. 1994); *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985). It is unclear whether Plaintiff was a convicted inmate or a pretrial detainee during the events at issue. However, the Court will analyze his claims under Eighth Amendment principles because the rights of pretrial detainees are equivalent to those of convicted prisoners.

subjective component of an Eighth Amendment violation. The undisputed evidence in the record shows that on December 9, 2012, Plaintiff was housed in a general population pod with other inmates. However, because of an earlier request for protective custody, Plaintiff was housed in a cell by himself and had a separate recreational period. Each cell door was secured via the control booth. The pod had cameras to monitor the inmates from the control booth and also buzzers in each cell and the common area of the pod which the inmates could use to call the control booth if they needed attention. At all relevant times, both the buzzer in Plaintiff's cell and the one in the pod were working. (ECF No. 47-5 at 1-2, ¶¶ 3-5, 7-8.)

In preparation for giving Plaintiff his recreational period, Defendant Fleming, who was in the control booth, instructed all other inmates to go to their cells, then monitored the pod to determine if all the cell doors were secure. Once the pod was locked down with the control booth system showing all other cell doors were closed and secure,[4] Fleming told Plaintiff he could take his recreational period and opened his cell door. (ECF No. 47-4 at 1-2, ¶ 3.)

Plaintiff alleges that after the rest of the pod supposedly was locked down and he came out for his recreational period, three inmates called to him, and he opened their cell door and went in. The inmates allegedly assaulted Plaintiff and broke his nose, but he fought his way out and closed their cell door. (ECF No. 1 at 2.) However, the video footage of the incident shows Plaintiff coming out of his cell and going directly into the cell of the other

---

[4] Fleming states that one cell door initially read as secure on the control booth system, but then read as open. Fleming instructed an inmate in that cell to close the door and then secured it. (ECF No. 47-4 at 1-2, ¶ 3.)

inmates. Plaintiff did not hesitate to approach the other inmates, so he apparently did not believe they posed a substantial risk of harm to his safety. (ECF No. 47-5 at 2, ¶ 10.) Plaintiff had made no complaints to Jail officials about these inmates before reporting the alleged assault. (ECF No. 47-4 at 2, ¶ 9.)

The video footage also shows Plaintiff coming out of the other inmates' cell shortly after he went in, moving in a normal, unhurried manner and with no visible injuries. He did not press the buzzer in the pod to call the control booth for help at that time. (ECF No. 47-5 at 2, ¶ 10.) However, Plaintiff did buzz the control room a few minutes later, apparently from his cell, and report that he had been assaulted by the other inmates. Defendant Fleming called for other correctional officers and the Jail nurse to respond to Plaintiff's report. At no time after Plaintiff was released from his cell for his recreational period did Fleming observe that any cell door other than Plaintiff's was open, either on the control room system or on the cameras.[5] Fleming did not see Plaintiff go into or come out of the other inmates' cell. (ECF No. 47-4 at 2, ¶¶ 4-5, 7-8.)

Given that Plaintiff voluntarily entered the other inmates' cell and had made no prior complaints against them, he has failed to show that being housed in the same pod with them posed a substantial risk of serious harm. Even if that were not the case, the undisputed evidence shows that Defendant Fleming was not deliberately indifferent to a substantial risk to Plaintiff's safety. Fleming believed that all the other inmates in the pod were locked down

---

[5] There is no evidence to explain, and the Court will not speculate, as to why Plaintiff was able to enter the other inmates' cell even though the control booth system showed all cells were secure.

while Plaintiff was out of his cell and did not observe Plaintiff going into or leaving the cell of his alleged attackers. In addition, when Plaintiff came out of the cell of his alleged assailants, he had no visible injuries. Therefore, Defendant Fleming is entitled to judgment as a matter of law on this claim.

Plaintiff also alleges that Defendants Fisher and Tyus falsely told Nurse Practitioner Don Willie that the injury Plaintiff sustained on December 9, 2012, was self-inflicted. Plaintiff alleges that Willie assigned him to a padded cell in a paper gown and then had him sent to Western Mental Health Institute in Bolivar, Tennessee. (ECF No. 1 at 4.) It appears that Plaintiff is claiming that telling Willie the wound was self-inflicted somehow caused Plaintiff to receive inadequate medical care.

The right to adequate medical care is also guaranteed by the Eighth Amendment. *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). "A prisoner's right to adequate medical care 'is violated when prison doctors or officials are deliberately indifferent to the prisoner's serious medical needs.'" *Id.* at 874 (quoting *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)); *see also Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004).

The objective component of an Eighth Amendment claim based on a lack of medical care requires that a prisoner have a serious medical need. *Blackmore*, 390 F.3d at 895; *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would readily recognize the necessity for a doctor's

attention.'" *Blackmore*, 390 F.3d at 897; *see also Johnson*, 398 F.3d at 874. The subjective component again requires Plaintiff to show that the prison officials acted with "deliberate indifference" to a substantial risk that he would suffer serious harm. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303.

The undisputed evidence in the record shows that Plaintiff was examined by a nurse at the Jail shortly after he reported the assault on December 9, 2012. The nurse reported that Plaintiff had scratches to the bridge of his nose and there was a moderate amount of bleeding. His nose was tender to the touch with redness and swelling. An x-ray was ordered and obtained the same day from a mobile x-ray service. The x-ray showed a comminuted nasal bone fracture and possible fractures through the walls of his left maxillary sinus. A face CT was recommended and ordered, and Plaintiff was placed in medical isolation for observation. (ECF No. 47-7 at 2, ¶¶ 5-9; ECF No. 47-8 at 8-9, 15, 17.)

On December 10, 2012, Plaintiff was taken to Haywood Park Community Hospital for a CT scan, which showed a mildly impacted fracture of the nasal bone and left frontal process of maxilla, but no intracranial injury or evidence of skull fracture. (ECF No. 47-7 at 2, ¶¶ 10-11; ECF No. 47-8 at 16.) That afternoon at approximately 5:00 p.m., Plaintiff was again seen by the Jail nurse for pain in his nose. The nurse's treatment notes reference the video footage of the incident and indicate the wound was self-inflicted. The nurse's notes do not state how that information was obtained. However, the nurse did note that Plaintiff had injured himself in the past, tearing off his toenails a few weeks prior. (ECF No. 47-7 at 2-3, ¶¶ 12-13; ECF No. 47-8 at 8-9.)

At approximately 8:30 p.m. that same evening, Plaintiff was placed in a padded cell for tearing off his toenails again and refusing to let the nurse treat him. Pathways Behavioral Health Services' crisis unit was called, and a mental health professional came to the Jail to see Plaintiff at approximately 11:30 p.m. (ECF No. 47-7 at 3, ¶¶ 14-16; ECF No. 47-8 at 9, 14.)

The evidence shows that Defendants Fisher and Tyus were not on duty at the time of the alleged assault on December 9, 2012. Fisher arrived at the Jail just before Plaintiff was about to be x-rayed. Tyus was notified of the incident when he arrived at the Jail after Plaintiff had already received medical treatment. (ECF 47-5 at 2, ¶ 9; ECF No. 47-6 at 2, ¶ 6.) Both Fisher and Tyus state they did not, at any time, deny or delay Plaintiff medical treatment while he was at the Jail or make any false statements about Plaintiff that caused medical treatment to be denied or delayed. (ECF No. 47-5 at 2-3, ¶¶ 12-13; ECF No. 47-6 at 2, ¶¶ 7-8.)

There is no evidence that either Defendant Fisher or Defendant Tyus falsely told the nurse practitioner that Plaintiff's injury was self-inflicted. However, even if the Defendants did so, there is no evidence that it had any effect whatsoever on the nature of the treatment Plaintiff was provided for the injury to his face. If Plaintiff is complaining that the report of a self-inflicted injury is what caused the Jail officials to call for a mental health consultation, the evidence shows that Pathways was not called until the next evening, after Plaintiff began

tearing off his toenails. Furthermore, Plaintiff has offered no evidence that he suffered any injury or other adverse consequences as a result of the consultation by Pathways.[6]

There is nothing in the record suggesting that Plaintiff was provided with inadequate treatment for any medical or mental health condition. Therefore, Defendants Fisher and Tyus are entitled to judgment as a matter of law on this Eighth Amendment claim.

Finally, Defendant Walker contends she is entitled to summary judgment on Plaintiff's claim that he was discriminated against on account of his race. Plaintiff, who is white (ECF No. 47-9 at 3), alleges that Lamount Shaw, an African American inmate, assaulted him over a job. When Plaintiff pressed the panic button, Defendants Walker and Tyus and two other Jail employees responded. Walker, who is African American, put Plaintiff on 23-1 lockdown for 30 days. However, Shaw, who allegedly was the aggressor, got out of confinement the next day. In addition, Walker allegedly also let Shaw have the job. (ECF No. 1 at 3.)

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, § 1. "To state a claim under the Equal Protection Clause, a . . . plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990) (internal quotation marks and citation omitted). Although Plaintiff alleges that he was

---

[6] The medical records submitted by the Defendants do not indicate that Plaintiff was sent to Western Mental Health Institute at that time. Even if he was, Plaintiff again has offered no evidence that he suffered any injury as a result.

discriminated against because of his race, the undisputed evidence in the record does not support that allegation.

The evidence shows that on May 30, 2012, Defendant Walker saw Plaintiff and an African American inmate arguing over a janitor job. The job had been assigned to the African American inmate prior to the argument. Defendant Tyus and Officer McFarland had intervened before Walker arrived to stop the argument from escalating further. Plaintiff spoke to Walker disrespectfully, which was a violation of Jail regulations, so she placed him on lockdown as a disciplinary action. (ECF No. 47-3 at 1-2, ¶ 3; ECF No. 47-6 at 1, ¶ 3.) Walker avers that she did not discriminate against Plaintiff because of his race, and had no further involvement with him. (ECF No. 47-3 at 2, ¶ 4.) Defendant Tyus states that the punishment Walker gave Plaintiff was appropriate under the Jail's policies and procedures. He further states that the African American inmate was also placed on lockdown. (ECF No. 47-6 at 2, ¶¶ 4-5.)

Plaintiff has submitted no evidence suggesting that Walker intentionally treated him differently than inmate Shaw on account of race. Therefore, Walker is entitled to judgment as a matter of law.

For all of these reasons, the Court finds there are no genuine issues of material fact for trial. Therefore, Defendants' motion for summary is GRANTED.

Pursuant to 28 U.S.C. § 1915(a)(3), the Court must also consider whether an appeal by Plaintiff in this case would be taken in good faith. The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The test for whether an appeal

is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. *Id.* The same considerations that lead the Court to grant summary judgment also compel the conclusion that an appeal would not be taken in good faith.

Therefore, it is CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith.

The Court must also address the assessment of the $505 appellate filing fee if Plaintiff nevertheless appeals the dismissal of this case. A certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997). *McGore* sets out specific procedures for implementing the Prison Litigation Reform Act, 28 U.S.C. § 1915(a)-(b). Therefore, the Plaintiff is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in *McGore* and § 1915(a)(2) by filing an updated *in forma pauperis* affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice of appeal.

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

                                           s/ **James D. Todd**
                                           JAMES D. TODD
                                           UNITED STATES DISTRICT JUDGE